Could you please call the first case. With the lawyers who are going to argue, please step up and tell us your name. Good afternoon, your honors. Joe Robb of RABB on behalf of Amy Renzulli, the appellant in cross-examination. Good afternoon. Jason Metnick on behalf of plaintiffs. Craig Chesney, Note Park Medicine. Okay. A couple of quick things. First of all, that microphone does not amplify, it only records, so please keep your voices up. That's my law folks in the back, so they want to hear. Second of all, you have 20 minutes aside. I'll ask the appellant in just a minute if you want to reserve any of that. You're both appellants, either of you can reserve if you want to, but you do not need to take the whole 20 minutes. We've read the briefs, so just use your time wisely as much as you feel you truly need. Would you like to reserve some time for rebuttal? Yes, your honor. Five minutes. And you? Okay. All right. We'll start with the appellant. Thank you. Mr. Robb. I appreciate it. Good afternoon, distinguished judges. Again, for the record, my name is Joel Robb. On behalf of the appellant and cross-appellee, Amy Renzulli, I do apologize in advance for my hoarse voice. I am a little bit under the weather. As your honor stated, the briefs are pretty much all-encompassing. They do flesh out the issues rather completely. I think I would start off with discussing the issue of the promissory estoppel and the matter regarding whether or not there was an unambiguous promise made by Renzulli to Chesney that was reasonably relied upon. And I definitely want to hear your argument, but what about the fact that we don't have a transcript or a bystander's report? Yeah. Well, your honor, I do understand that having an actual transcript of the proceeding would be preferable, but it's not necessary according to Rule 323A. The report on proceedings may, not must, but may include evidence or ruling of the trial judge and a brief statement of the trial judge of the reasons for the decision. All three are present. Moreover, the basis of our appeal does not rest on the credibility of witness testimony. It's regarding the application of the law by the lower court. Really sufficiency of the evidence to show promissory estoppel, isn't it? To a degree, but it's the application by which the court addressed it. The lower court seemed to deduce or imply an unambiguous promise of a lot of them, three of them at least, as I could discern. And on the basis of trying to establish an unambiguous promise, certainly an implication versus being explicit would be suggestive of ambiguity. Moreover, when you've got an alleged promise to open up a school of rock, an alleged promise to plan to open up a school of rock, and then using the lower court's own words, a promise to lease, I think right then and there will demonstrate the ambiguity that was most certainly present. The lower court based its decision largely on a series of e-mail communications between the party and upon conversations which she claims took place where Rizzulli promised that she would lease his building. I remind the court that there wasn't a building. This was vacant property. And that the cost that a savvy real estate developer like Craig Chesney would incur to induce a prospective tenant to make a decision on whether to enter a lease. Really, the facts here express the converse of what is actually alleged by the plaintiff. In any transaction where an owner is acting as the developer and is trying to induce a client, or excuse me, a potential lessor, you're dealing with vacant property. There has to be a feasibility study. There has to be proposed drawings. These are all costs of doing business. Isn't this all kind of a chicken or an egg issue? I mean, the owner should be having plans, but the owner doesn't know what the potential tenant would want, and so the tenant should have plans. I mean, actually, isn't this a pretty standard situation where parties are trying to get together to come to an agreement? I would agree that this is a standard form of negotiations, but one that did not come to fruition. Mr. Chesney, the plaintiff, expended architectural fees. Amy Renzulli also expended architectural fees with the same architect. The lower court relied on e-mails, one in particular dated April 27th, to suggest that four previous contracts, the last one between Mr. Chesney and the architect, Mr. Sheese, which was, I believe, consecrated on April 12th, the lower court used communications after the fact to substantiate a promise beforehand, one that would create the limits. On the record, though, how do we confirm that the lower court somehow committed error? By taking a look at the trial court's ruling, its oral trial report, its decision, its findings, plus the transcript of the post-trial motions. This court can glean what the lower court relied upon in making its findings. Without the record, though, it's pretty much presumed by this court that the trial court understood the law, followed the law, and applied the proper facts that was before the court to the law. There is a record, though, Your Honor. It may not be a transcript of the actual proceedings whereby you have the testimony, but the exhibits that were stipulated between the parties and entered into evidence are part of that record, and that's largely what the lower court relied upon in making its decision. What exhibit number was the e-mail you just referred to? Do you know? I don't off the top of my head. I want to say eight. Are you sure they're part of the record, the exhibits? By the very nature of the question, I don't want to say yes, I'm sure. I believe that to be the case, Your Honor. But if the court received an e-mail into evidence without objection, where's the problem? We're not objecting to the existence of the e-mail or consideration of the e-mail. The fact is that what the e-mail discusses could not have justifiably been used by the lower court to deduce or to rule in favor of promissory estoppel. And I can give you a poor example. The April 27th e-mail, the e-mail was from Ernie Renzulli, and the content of that e-mail included language. We need to complete the attachments for tenant and landlord's work. We need to see the work schedule so we can back into our dates. We need to see an estimate for the budget for the build-out. There were so many questions and unresolved issues in this transaction that no reasonable person could deduce that there was, in fact, an agreement, a promise. The lower court's assessment that it was a promise to lease, and it threw a wrench into everything because it, for the first time, suggested something that had never been directly alleged in the complaint or suggested at trial, that this was a promise concerning a real estate transaction that would take place over a period of more than a year, whereas in the statute of frauds, but going back to the issues raised in that April 27th e-mail, let me suggest that a promise to open up a school of rock, or a promise to plan to open up a school of rock, is largely meaningless when you're dealing with a vacant piece of property. When the communications between the defendant and the plaintiff are, the defendant is regularly asking, I need to know what the build-out time frame is, I need to know when it's going to be finished, I need to know what the budget is so I can tell if it's in my time frame. Since the negotiations began, the plaintiff made aware, I'm sorry, the defendant made aware to the plaintiff that there was a time frame based on the school of rock franchise agreement by which, when it was signed, there was a certain amount of time after that by which the defendant had to open up the school of rock. That date was well known by the plaintiff, but in the end, a date that was originally supposed to be in June, pushed to September, and early May, the defendant learns that that build-out isn't even possible to be completed until January, and there still is not a comprehensive build-out budget. It made it untenable. There was not TIF funding yet procured, which was the plaintiff's responsibility. All of this reflects that any reliance by the plaintiff, an admitted real estate developer, was unreasonable. These are the normal costs of business in trying to market undeveloped property to a tenant looking to develop. In fact, beyond the April 27th email, every statement attributed to Renzulli, every email considered by the lower court, was qualified with reservations about unresolved issues. The next requirement for a promissory stample really raises the question of whether or not the plaintiff was an innocent party. In assessing whether or not somebody was an innocent party, to determine such, did one person suffer a detriment while another suffered a gain? In this case, both parties, as I stated earlier, expended money in order to try to see if this deal was feasible. When it wasn't, Ms. Renzulli moved on. There was no detriment to Mr. Chesney. The costs were typical in assessing any project, and the feasibility study and drawings have future applicability. Well, isn't that why you prevailed on the unjust enrichment claim? Yes, it is. That was an easy one. Is there anything in the record that shows they were used in the future? I mean, did they build a building? Is that in the record? It is not, Your Honor. Moving back to the issue of whether or not there is a sufficient record, the only thing required according to Supreme Court Rule 323 is that there be a record of sufficient completeness in order to question the evidence pertaining to the issues raised at trial. The lower court referenced and discussed these particular exhibits from trial in her trial court order, and I think this court has the jurisdiction and the duty to assess whether or not this law was improperly applied. There's also a larger issue of whether or not this has an adverse effect on commerce moving forward. We have parties. There was no letter of intent signed. There was no lease signed. There was no completed lease with all of the terms present, all responsibilities that would have fallen on the plaintiff to provide. So if we would hold that a prospective tenant investigating undeveloped property is liable for general assurances at best, not on ambiguous promises, but general assurances that she wants to move forward, foreseen ahead, that, you know, I'm not talking about negotiations. We only have a few more issues to settle. If we would hold a defendant liable for the cost incurred by a landlord for that, nobody would talk to one another. It would really stifle the real estate market. How could one engage in a feasibility study? How could one ask for drawings that if they don't commit before knowing these things in advance, they're going to be held liable? I just don't see the connection. The e-mails were always encouraging the landlord to keep going. Sure. And there is no question that Ms. Renzulli wanted this to work. And as the plaintiff's cross-brief acknowledged, Amy Renzulli, when it came to real estate development, was a little bit of an analyst. But in the larger scheme of things, it's not simply enough to be encouraging. Foreseen ahead. Maybe there would have been an unambiguous promise if she was a steamboat captain. But in terms of an unambiguous promise to either lease, open a school of rock, or plan on opening a school of rock, I'm still not quite sure what is the final determination that the court determined was the unambiguous promise. But absent that, to imply through some type of mosaic theory that all these extemporaneous assurances made in these e-mails constitute an unambiguous promise, I think is just wrong. Especially when all of those assurances, every e-mail that contained an assurance, was followed up with a detailing of what was still missing, what was still needed. There were too many terms left unresolved for the property owner to reasonably rely that an e-mail such as foreseen ahead would constitute an unambiguous promise that should be relied upon. Especially when all the parties, both parties, had to incur expenses just to determine whether or not this deal could move forward. If the court finds that the lower court's statement at the motion to reconsider oral arguments, that this was a promise to lease as Judge O'Brien characterized it, for the first time this raises a statute of frauds issue that had never previously been present. A statute of frauds, put colloquially, that you cannot have an oral contract for an interest in real estate and that requires more than a year to perform. So, for the court to consider, there was nothing in writing. That is the best I can think of. Thank you, I appreciate that. But, you are correct, Your Honor, there was nothing in writing. There wasn't just one letter of credit, I'm sorry, letter of intent. There were two. Both were unsigned. The lease was unsigned. To suggest that there was a promise to lease and that the defendant would be liable to cost incurred by the plaintiff in marketing this property to Renzulli, raises a statute of fraud question that had not been raised earlier. And that was the basis of... What would be the statute of fraud on that? Well, the lease itself would require more than a year to perform. Of course, they're not seeking the rent for five years. No, they're seeking what they claim to be damages, their costs. It seems to... Are you suggesting that she changed the theory between the original trial order and the motion to reconsider on what was the promise, underlying the promissory estoppel? It seems to me that in both she's saying the promise was to open a school of rock on this property. That was the promise. Frankly, I thought the promise articulated by the lower court was shifted and was not well-established. I think there's points in the record that show a variety of different... She said open a SOR on this property. She also said during the oral argument, when asked exactly what was the unambiguous promise, she said, quote, a promise to lease. If you want to reserve any time, your time is up unless there are any additional questions. I will reserve. Thank you. Thank you. Good afternoon. May it please the Court, Jason Matnik on behalf of the Plaintiffs Cross Appellants. Let's start out with some of the things that counsel just raised here. He argued emails and exhibits that are not part of the record on appeal. The emails that were entered into evidence as trial exhibits are not part of the record on appeal. There is no trial transcript, obviously, as Your Honor's know. Doesn't that kind of cut both ways, though? Well, I disagree with that. I don't think it does because the issue that I'm arguing is an issue of law. And I'm happy to cut right to that, in fact. Because what happened here was that Judge O'Brien applied the wrong standard of law on reconsideration. And what she did was she used a pleading standard before a verdict is rendered to assess whether or not the complaint, the amended complaint here, stated a claim for fraudulent misrepresentation. And the standard for assessing whether or not a complaint states a cause of action after a verdict has been rendered is whether or not it puts the opposing party on notice of your claim, and whether or not there are conclusory allegations from which that claim can arise. And I've cited at least two Illinois Supreme Court cases on that point. One of them, Sueda v. Corey. The other one's Adcock v. Breakgate. In both of those cases, the Illinois Supreme Court reaffirmed that any pleading defects are waived when the trial court has rendered a verdict. But wasn't there also an issue and a finding about whether it met the clear and convincing standard? So that's correct. But the way that the court phrased that is that she was reassessing whether or not the fraud alleged initially in the amended complaint was proved by clear and convincing evidence, which she then said was not proved. So what she's doing in that second trial opinion is relating back to whether or not there was a fraudulent misrepresentation that the plaintiff was looking at other properties at the same time that she was committing to my client's property. What she didn't do is she didn't reverse herself that it was a fraudulent misrepresentation that the plaintiff was not taking steps to secure a letter of credit and then never secured a letter of credit. So the way you got to look at that opinion, it's very carefully she is stating that it's the alleged fraudulent misrepresentation. And what she did is she went on to say that she did not believe that we had alleged fraudulent misrepresentation relating to the letter of credit issue. Therein lies the problem. First she says all that and then she says, furthermore, plaintiff's facts regarding defendant's alleged fraudulent misrepresentation must be proved by a clear and convincing evidentiary standard which plaintiffs fail to do. Right. I agree. That's what she said. And when she is referring to that, that's after she has disposed of the fraudulent misrepresentation related to the letter of credit. So she is relating back to what she is claiming is the only fraudulent misrepresentation alleged in the case, not the letter of credit issue. I believe that is what her opinion is trying to describe. And so, I mean, she, it also would be totally inconsistent for her to say that and then say absolutely nothing about all of her factual findings on each element of fraudulent misrepresentation related to the letter of credit. The trial court didn't do that. She didn't say anything about that. She never once in her second opinion said all of my factual findings about the steps that plaintiff, that defendant never took to obtain a letter of credit were wrong. Now that I've looked at the evidence again, it's all wrong. She didn't say anything like that. She left that in place. The basis for her reversal very clearly is that we didn't meet an alleged pleading standard. She says that the complaint didn't plead the evidence that she wanted to see. She does say that, but she seems to say both to me. And then there is also the issue of whether you made an oral motion, which of course we don't have a record on. So you do not have a clear record on that. However, you have everything pointing to exactly what I put in my briefs is that there was an oral motion raised at trial, and the parties argued that in their post-trial briefs that the trial court elected not to rule on that issue as part of her initial trial order is frankly something that I can't explain. And she did not take up the issue in writing, even though the parties had, until she issued her ruling on reconsideration. And by that point, the way that the trial court disposed of the issue was saying, well, now it's too late because now I've rendered my final verdict. However, I had not raised that issue only after a final verdict. I raised it earlier. She elected not to address it. And I'm happy to discuss that as well because I think that even had I raised it at that late stage, I think the judge did not use the appropriate discretion. And the reason why is because it doesn't further the ends of justice, which I know is a unique abuse of discretion standard in this context under 616C. But the judge didn't say anything about that. She just simply said it's too late because you have a heightened pleading standard to prove it. And that's the point she seems to be making. The point of pleading is notice. What's the problem? That might have been the point she was trying to make, but it's certainly not stated that explicitly in her ruling. Notably, there is no surprise to the defendant here that this was argued at trial. Well, didn't they try to introduce some evidence or something at that point of applying for this? They tried to bring it up after the case was already closed. And I think it's important to note that this case didn't happen in 48 hours back-to-back. There were many months in between the two trial days. Frankly, if the defendant wanted to bring that evidence forward, she certainly had many opportunities to do so. She just didn't do it. Now, the damages she was awarding on this count for the misrepresentation was attorney's fees? So those would have been attorney's fees incurred in the case. Right. And I understand that.  I believe it's recoverable under a fraudulent misrepresentation claim. I haven't briefed that issue out because that was not one of the issues raised on appeal. No, I'm just kind of curious. It's probably worth more than anything else in this case at this point, just guessing. I know. It's going to need to present my petition. So I'm not sure what would have been awarded at this point, Your Honor. I guess, are there any other questions on these issues? What exhibits did you present in support of your promissory, estoppel, and fraudulent misrepresentation? So almost all the exhibits that were entered into trial were the exhibits that I presented or that were stipulated. And they were mostly copies of attorney's bills, architectural plans that my client had paid for, invoices from the architect. The architectural plans indicating that the defendant had revised those plans that my client paid for. And then emails that are only recited in part that Your Honor's have in front of you. So a lot of those. We didn't see any of those in the record. None of those are in the record. None of those trial exhibits have been preserved as part of the record. I think it's also noteworthy that the trial court did not look at any of the Loyola factors in deciding whether or not to grant my motion to amend. She simply bypassed that by saying it was then too late. She never addressed that. But wasn't she saying that whether other parties would sustain prejudice or surprise by virtue of a proposed amendment? Wasn't that what she was saying? I don't know. I don't remember her referring to Loyola, but I mean, it's such a Loyola factor. That is a Loyola factor, but there was no surprise here expressed by the defendant. And timeliness, that's another Loyola factor. Timeliness is another Loyola factor. I agree. But the basis upon which she said it was untimely was because of a heightened pleading standard. And that standard I think she goofed on. So I think that for those reasons, whether or not we find that, you know, if we use the Swigert v. Corey standard to identify that the defendant was on notice, that there were other financial concerns here. And obviously being incapable of obtaining a letter of credit would certainly be a financial concern for someone who's about to construct a building. That was not disclosed to my client, and that is something that we did prove at trial, that the defendant had never taken those steps. I think that that is sufficient in order to amend the pleadings to conform to the evidence. We're not adding a new claim here. It's related to the same claim that was already pled that we believe the defendant was surely on notice of, surely was arguing, and surely had a chance to defend in this case. And even without that, we tried to amend the pleadings multiple times here, both before and after judgment, and the judge simply discarded it without much fanfare. Frankly, it would be an injustice to allow a defendant to get away who's been proven with factual findings after trial that she fraudulently induced someone else to spend money for her benefit. So for those reasons, I think that the trial court's judgment should be reversed on count two and be re-entered in favor of the plaintiffs. Thank you. Thank you, Jax. If I may close the court, I do it for the record. Joel Robb on behalf of the appellate across Appalachia, Amy Renzulli. The suggestion that this was merely a pleading standard but for a post-counsel is incorrect. It's much simpler than that. There was, in fact, a new claim being asserted after trial. Just because the cause of action is the same, fraudulent misrepresentation, a complaint can have multiple counts under the same cause of action for different fact patterns. But the fact of the matter is, is the complaint dealt with an issue. Basically, that Amy Renzulli was looking at other properties at the same time, which, number one, is not a problem. It's the act of a normal business person. But it was debunked during discovery when the architect said, no, I was with her, we didn't start looking at new stuff until this one collapsed. Then, all of a sudden, opposing counsel's plan sort of shifted. But they never amended the complaint. They knew about this scenario that they were going to try to prove up at trial before trial. They could have amended it at any time. Now, granted, perhaps more discovery would have been needed. Your Honor. They're arguing that they did ask to amend it several times and the trial court denied it, at least twice. Only after trial. Only after trial. And the issue is, is a- After trial. Start. In the middle of the trial. Do you disagree with their- I do disagree. It was after the trial had concluded. Okay. The issue is that a motion to amend should be a right and it should include the proposed amended complaint. That was not the case here. But, moreover, the issue is that the plaintiff knew of this back scenario in advance. To allow them to amend the complaint after the trial puts the defendant in a position of prejudice which is insurmountable. You're alleging fraud but you have not specified what the fraud is. How does one defend that? It's impossible. And that is the situation here. Counsel also suggested that Ms. Ranzulli somehow induced Craig Chesney to expend money. For what reason? Was it for her own entertainment? Did she walk into this never intending to open up a school of rock? Did she waste her own time, her own money, her own resources for no other reason than just to perpetuate a fraud? Of course not. As has been stated, both parties expended architectural fees. Both parties took a great deal of time and effort to try to make this come to fruition. This was not the act of one person maliciously trying to cause harm to another for no real purpose. I think the same arguments that plaintiff has made regarding the defendant, the defendant could have actually made against the plaintiff. The plaintiff failed to secure TIF funding. The plaintiffs failed to provide a build-out budget, a timeline of delivery, cost, a lease with full terms, assigned level of credit. All of these things would have been necessary in order to cement this deal, and it just wasn't there. Any other questions? Thank you. Thank you, counsel. Don't feel you need to take it, but if you want to. I fully appreciate that, and I think there's only one point I need to address here, and that's the timing issue of whether or not we would have been able to file an amended complaint earlier, and we wouldn't have been able to in this case because there were verified pleadings in the case, and the defendant admitted at trial for the first time that she didn't take steps to procure a letter of credit. Those are things that were beyond our knowledge, things that we had tested her on earlier, and she had equivocated earlier. It was only at trial that she had admitted she had no evidence whatsoever of any documents, of talking to any bankers, or trying to procure a letter of credit. Therefore, we responded and asked to amend the pleadings to conform to the proof, and Your Honor knows the rest of the story. But doesn't that just simply create a basis for count one, which the court found in your client's favor? Count one was the promise to open a business. So this was a fraudulent misrepresentation that she was procuring a letter of credit, which she was repeatedly telling my client, when in fact she wasn't doing anything to do that. And the reason why the letter of credit was so critical, had it been in place, is that it would have secured my client from expending more money for the defendant's benefit. So it goes to count two, which is a fraudulent misrepresentation, that she should have known if she was taking steps to procure a letter of credit, and she wasn't. Well, wouldn't that have come out in discovery? It didn't, because when she was asked about that, she said she couldn't remember one way or another. So it went nowhere, and then at trial, she reversed course, and it became clear that she actually had not done anything. Well, then post-trial, she was proven she did do something, though. Actually, I don't agree with that either. What we saw was, and you know I disagree with that evidence being looked at, but what we saw was an affidavit from a banker that says basically that they had spoken, but they don't identify it was for this transaction, or that she actually ever submitted any information or did anything. And I never got a chance to test it, obviously. Thank you, both of you. We will take this under advisement. Really excellent lawyering. Like I said, probably worth more than the case, but you will hear from us shortly.